Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★        ★ ★ ★

**MEMORANDUM OPINION**

No. 04-07-00162-CR

Ervin **ELLISON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-8039
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Alma L. López, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:    September 10, 2008

AFFIRMED

A jury convicted appellant Ervin Ellison of murder and sentenced him as a habitual offender

to life in the Texas Department of Criminal Justice–Institutional Division.  Ellison raises two issues

on appeal, contending the trial court erred in denying his motion to suppress statements he made to

law enforcement.  We affirm the trial court's judgment.

## BACKGROUND

Gerald Lee was killed by gunshot wounds to the head and chest. After witnesses told police that Lee and Ervin Ellison had argued on the night of the murder and that Ellison had been seen with a gun running after Lee, the police obtained a warrant for Ellison's arrest. Ellison was arrested the following afternoon and taken to police headquarters. Detective Wallace McCampbell of the San Antonio Police Department told Ellison he was under arrest for Lee's murder and advised Ellison of his rights. Ellison stated he understood his rights, waived them, and said he wanted to speak with the detective. The interview was recorded by a digital video recorder onto a DVD.

Ellison filed pretrial motions to suppress challenging the admissibility of his recorded statement. Following a hearing, the trial court denied the motion to suppress, finding Ellison's statement was voluntary and "done in compliance with 38.22."

## DISCUSSION

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We afford almost total deference to a trial court's determination of historical facts supported by the record especially when they are based on an evaluation of the credibility and demeanor of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same deference to a trial court's ruling on mixed questions of law and fact when the resolution of those questions turns on an evaluation of credibility and demeanor, but

review de novo mixed questions of law and fact that do not depend on credibility and demeanor. *Id*.

Ellison first argues his statements were taken in violation of section 3(a)(3) of article 38.22 because "the device used by law enforcement was not capable of making a true and accurate recording." *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(2), (3) (Vernon 2003). He contends two interruptions or "skips" at the beginning of the DVD recording prove the recording device was incapable of making an accurate recording. The State argues this complaint was not preserved for appellate review. We agree.

Ellison filed two pretrial motions to suppress in which he asked the court to exclude statements he made to law enforcement. The first motion asks the court "to suppress all testimony obtained after the unlawful arrest and detention of Defendant." The second motion alleges Ellison's statements "were taken without safeguards required by and in violation of Article 38.22 of the Code of Criminal Procedure." At the hearing on the motion to suppress, Ellison argued the recorded statement should be excluded because it was not voluntarily made and that some specific statements were inadmissible. Ellison also contended "that there . . . are gaps in the tape" and argued:

> Your Honor, I hate to interrupt but my client has asked me to make an oral motion at this point to exclude the entire DVD. He believes that certain portions were excluded that he made comments on that would be of assistance to his case . . . I am putting simply on the record . . . my client wishes for me to place that objection.

Ellison complained there were omissions on the tape. He did not suggest the recording device was incapable of making an accurate recording.

To preserve error for appellate review, a party must state the grounds for the ruling he seeks "with sufficient specificity to make the trial court aware of the complaint", unless the specific ground is apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A); *see* TEX. R. EVID. 103(a)(1). The

complaint on appeal must comport with the trial objection. *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005), *cert. denied*, 127 S.Ct. 145 (2006). Ellison did not argue in the trial court – either in his motion to suppress or at the suppression hearing – that his statements should be excluded because the recording device was incapable of making an accurate recording. Nor did the trial court make any findings on this issue. Accordingly, Ellison failed to preserve the complaint for appeal. *See Swain*, 181 S.W.3d at 367; TEX. R. APP. P. 33.1(a)(1)(A).

In his second issue Ellison argues the trial court erred in denying his motion to suppress because his recorded statement was not made voluntarily, knowingly, or intelligently due to his being intoxicated. Whether a statement is voluntary is determined by examining the totality of the circumstances. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007), *cert. denied*, 128 S.Ct. 1128 (2008). "Intoxication, while relevant, does not automatically render a statement involuntary *per se*." *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 832 (1997). Rather, the question is whether the intoxication rendered the defendant incapable of making an informed choice whether to talk to law enforcement officials. *Id.*

Detective McCampbell testified at the suppression hearing that he read Ellison the statutory warnings and told him he was under arrest for murder. Ellison replied that he understood his rights, signed and dated the statutory warnings, and agreed to be interviewed. According to McCampbell, Ellison did not appear intoxicated during the interview, nor did Ellison indicate in any way that he did not understand what was happening.

Ellison contends his intoxication was established by the DVD, which shows Ellison (1) drank three bottles of water during the interview with Detective McCampbell, indicating dehydration, (2) fell asleep when Detective McCampbell left the room, (3) told the detective he was drunk the

night before the interview, and (4) was "obviously confused as to the exact consequences of making such a statement."

On the DVD, Ellison told Detective McCampbell he was having difficulty relaying the events of the night of the murder because he had been drunk that night. But Ellison admitted he slept the entire day and had gotten up shortly before police arrived to arrest him. The DVD shows Ellison drinking three bottles of water during the interview. However, there was no testimony linking Ellison's drinking three bottles of water to intoxication, and his thirst could have been the result of dehydration from being intoxicated the previous evening. Ellison did lean back and briefly close his eyes at times when the detective left the room, but at other times he was awake and looking around. Ellison also made telephone calls, during which he was alert, coherent, and animated. And while Ellison stated during the interview that he did not know "what was happening," it was in the context of his claim that he did not kill anyone so he could not understand why he was being arrested, not an assertion that he was unable to comprehend his situation. Ellison obviously understood his circumstances because he told Detective McCampbell, "I'm being arrested because somebody say they seen me . . . [s]everal people say they seen me . . . [i]t's they word against my word, they didn't see me shoot nobody." Ellison also cogently explained his situation to the people he called. Throughout the entire interview Ellison denied killing Lee. He continuously attempted to exculpate himself from the events surrounding the murder. When the detective brought out inconsistencies in Ellison's story, he changed the story – always in an effort to negate any responsibility for the murder. Ellison does not appear or sound intoxicated on the DVD. To the contrary, he appears to respond rationally and coherently to the detective.

We cannot say the trial court abused its discretion in finding, based on the totality of the circumstances, that Ellison's statement was voluntary and in denying the motion to suppress. We therefore affirm the trial court's judgment.

Steven C. Hilbig, Justice

Do Not Publish